FILED
2021 MAY 14 AM 11:31
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HOWARD O. FORD,<br><br>Plaintiff,<br><br>v.<br><br>MEGAN J. BRENNAN, Postmaster General, United States Postal Service,<br><br>Defendant. | **MEMORANDUM DECISION DENYING MOTION TO ALTER JUDGMENT**<br><br>Case No. 2:15-CV-00539-BSJ<br>Consolidated Case No. 2:17-CV-00167<br><br>District Judge Bruce S. Jenkins |

## I. **INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Alter Judgment.[1] The Court heard argument on the Motion to Alter Judgment on December 7, 2018.[2] Jennifer Tomchak argued on Plaintiff's behalf, and Amanda Berndt of the U.S. Attorney's Office argued on Defendant's behalf. During the hearing, the Court requested certain additional materials from the parties, which they submitted.[3] After hearing the parties' respective arguments, the Court took the matter under advisement. On December 18, 2018, the Tenth Circuit agreed to consider, *en banc*: "Whether an adverse employment action is a requisite element of a failure-to-accommodate claim under the Americans with Disabilities Act ("ADA")." *Exby-Stolley v. Bd. of Cty. Comm'rs*, 910 F.3d 1129, 1130 (10th Cir. 2018). Given the potential impact of *Exby-Stolley*

---

[1] ECF No. 50.

[2] ECF No. 62.

[3] *See* ECF Nos. 71, 73–74.

on this case, the Court delayed its decision until the Tenth Circuit resolved the *Exby-Stolley* appeal, which occurred October 28, 2020. *See Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 788 (10th Cir. 2020). The Court then held a further hearing on the Motion to Alter Judgment on February 16, 2021, to allow the parties to discuss the impact of *Exby-Stolley*.[4] The Court has carefully considered the parties' arguments, the applicable law, and relevant facts. Now, being fully advised, the Court denies the Motion to Alter Judgment.

## II. ANALYSIS[5]

Plaintiff asks the Court to alter its judgment pursuant to Rule 59 based on purported errors of law.[6] Rule 59(e) permits a party to file a motion to alter or amend a judgment within twenty-eight days after judgment is filed. "A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence.'" *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997); *see also Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) ("Rule 59(e) motions may be granted when "the court has misapprehended the facts, a party's position, or the controlling law."). On the other hand, Rule 59 "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Nelson* at 929.

Plaintiff's Motion to Alter Judgment presents two main challenges to the Court's summary-judgment ruling: (a) whether the Court correctly concluded Plaintiff failed to show

---

[4] ECF No. 77.

[5] The material facts are set forth in the Court's Order granting summary judgment (ECF No. 46).

[6] Plaintiff invokes Rule 60(b) but does not make any discernable argument under any provision of Rule 60(b). As the Tenth Circuit has stated, "a motion will be considered under Rule 59(e), when it involves reconsideration of matters properly encompassed in a decision on the merits." *Phelps v. Hamilton*, 122 F.3d 1309, 1323–24 (10th Cir. 1997) (internal quotations omitted).

2

USPS took adverse action against him; and (b) whether the Court properly concluded USPS reasonably accommodated Ford's various disabilities. The Court's analysis below will follow the same structure.

### a. Plaintiff fails to identify any legal error in the Court's adverse-action findings.

First, Plaintiff did not suffer any adverse employment action as a result of the Notice of Separation because it had no materially adverse impact and because the undisputed reason it issued was nondiscriminatory. Second, Plaintiff's "totality of the circumstances" argument does not reveal any legal error because Plaintiff never claimed constructive discharge.

#### 1. Notice of separation

Plaintiff, citing *Roberts v. Roadway Express, Inc.*, 149, F.3d 1098 (10th Cir. 1998), claims the Court erred by finding the Notice of Separation USPS issued on October 7, 2014, did not constitute adverse employment action. *Roberts* held that a suspension or termination constitutes adverse employment action, even if later withdrawn. *Id.* at 1104. While courts in the Tenth Circuit liberally construe adverse employment action, the essence of the Court's inquiry is to determine whether USPS took employment action "materially adverse" to Plaintiff. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ((defining "materially adverse" actions as those that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination").

Here, Plaintiff fails to identify any legal error in the Court's adverse action findings. Plaintiff contends he was terminated as defined by *Roberts* when USPS sent him the Notice of Separation, informing him he would be separated from the Postal Service because he had been in

3

leave-without-pay status for over one year.[7] This Notice of Separation had no material impact on Plaintiff's employment. When USPS issued the Notice of Separation on October 7, 2014, Plaintiff had already been absent from his job for well over a year. He remained absent after he received the notice and until the Office of Personnel Management approved Plaintiff's application for disability retirement in April 2015. Plaintiff fails to describe any material change resulting from the Notice of Separation. The Court finds no material change because Plaintiff never returned to work after July 29, 2013, because his doctor repeatedly wrote notes indicating Plaintiff was unable to work until he eventually took disability retirement.[8] Thus, the Notice of Separation issued on October 7, 2014, did not materially change Plaintiff's work status because he was already medically restricted from working when it was issued and Plaintiff never regained the ability to work prior to his disability retirement in April 2015.

Moreover, even assuming the Notice could be construed as materially adverse, it is undisputed that the action was taken for a non-discriminatory purpose. Plaintiff must show any purported adverse action at least relates to his disability or FMLA use. Rehabilitation Act discrimination claims require him to show that USPS took some adverse action "because of the disability." *Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 760 (10th Cir. 2020). To prove FMLA interference, Plaintiff must show that his employer's action was "related to" his protected status or activity. *E.g., Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). Similarly, to prove retaliation, Plaintiff must demonstrate a "causal connection" between his protected activity and any purported adverse action. *Proctor v. United*

---

[7] ECF No. 23, Ex. N. The Notice was later withdrawn. *See* ECF No. 23, Ex. O.

[8] Mot. Summ. J. Hr'g at 16 (ECF No. 49).

4

*Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Plaintiff does not suggest the Notice of Separation is related to, or was issued because of, some protected activity or status of Plaintiff. Instead, the undisputed facts reveal that the Notice of Separation was administrative in nature and was issued as a result of Plaintiffs lengthy absence from work based on his physician's opinion that Plaintiff could not return to work based on his depression and anxiety.[9]

In short, Plaintiff has not shown the Court erred when it found a lack of adverse action. The Notice of Separation was issued automatically after Plaintiff had been absent for over a year. Plaintiff never returned to work prior to taking disability retirement in April 2015.

### 2. Totality of the circumstances

Second, Plaintiff contends the Court erred in evaluating whether USPS took adverse action against him by not considering the totality of the circumstances. Again, Plaintiff identifies no error in the Court's analysis. Plaintiff cites cases considering questions of constructive discharge, in which courts consider the "totality of the circumstances."[10] These cases are unhelpful to Plaintiff because he did not raise a constructive discharge claim.

Any potential arguments about constructive discharge or hostile work environment are untimely because Plaintiff did not raise them at summary judgment. Rule 59 "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised

---

[9] *See* ECF No. 28 at 19–21; *see also* ECF No. 23, Ex. N (stating the Notice of Separation resulted from Plaintiff being on leave without pay status for over one year and "is purely an administrative matter and is not of a disciplinary nature").

[10] ECF No. 50 at 5 (citing *Lockheed Martin Corp. v. U.S. Dept. of Labor*, 717 F.3d 1121, 1133 (10th Cir. 2013)); ECF No. 60 (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987); *Ewing v. Doubletree DTWC, LLC*, 673 F. App'x 808, 812 (10th Cir. 2016)).

5

prior to the entry of judgment." *Nelson* at 929. Plaintiff did not raise constructive discharge in his complaint or in his opposition to summary judgment.[11] In fact, counsel expressly conceded during oral argument on summary judgment that Plaintiff had not previously referred to, let alone claimed, constructive discharge.[12] Plaintiff now cites cases involving constructive discharge and hostile work environment for the first time in a Rule 59 Motion. These arguments are untimely.

Further, even if the argument was timely, Plaintiff makes no attempt to describe how he might make out a hostile work environment or constructive termination claim. Instead, Plaintiff merely contends the Court must refer this case to a jury to determine whether the totality of the circumstances, which Plaintiff defines only by general reference to conclusions in his Motion for Summary Judgment, constitute some undefined unlawful circumstance. The Court cannot properly grant a Rule 59 motion based on an argument Plaintiff first briefs, cryptically, post-judgment. Thus, the Court also declines to alter or amend its judgment on this basis because it "raise[s] [an] argument[] . . . that could have been raised prior to the entry of judgment." *Nelson*, 921 F.3d at 929.

---

[11] Plaintiff contends he raised this issue by alleging a hostile work environment in his formal employment complaint filed with Defendant and referring to that complaint in his Complaint filed in this case. Yet referring to this historical fact is insufficient to put Defendant or the court on notice of a hostile work environment in this case, particularly given the failure to prosecute that claim in any meaningful way during this litigation.

[12] Mot. Summ. J. Hr'g at 22 (ECF No. 49). Counsel's statements clarified to the Court that the phrase "totality of the circumstances" on page forty-seven of Plaintiff's summary-judgment brief was not intended as a term of art related to constructive discharge.

### b. **Plaintiff identifies no error in the Court's decision as it relates to any reasonable accommodation**

Plaintiff contends the Court erred by finding Plaintiff could not be accommodated after July 29, 2013, when Plaintiff's physician opined Plaintiff could not work due to psychological limitations. Plaintiff also contends the Court adopted a rule that accommodation requests must be presented in writing. The Court will discuss the legal framework for a failure-to-accommodate claim and then address Plaintiff's two arguments in turn.

#### 1. *Exby-Stolley* is consistent with the Court's summary-judgment order

Under Tenth Circuit prevailing at the time Plaintiff filed his Motion to Alter Judgment, Plaintiff appeared to be precluded from recovering on his failure-to-accommodate claims based on the same lack of adverse employment action discussed above. While "the language 'adverse employment action' does not appear in the ADA," the 2018 Tenth Circuit Panel noted the ADA does contain the same language found in Title VII that courts have relied on to impose an "adverse employment action" requirement. *Exby-Stolley v. Bd. of Cty. Comm'rs, Weld Cty., Colorado*, 906 F.3d 900, 906 (10th Cir. 2018) ("The language of § 12112(a) tracks similar language from Title VII of the 1964 Civil Rights Acts, which prohibits employers from discriminating on the basis of race, color, sex, religion, or national origin 'with respect to [an individual's] *compensation, terms, conditions, or privileges of employment.*"), *opinion vacated on reh'g en banc sub nom. Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020). The Tenth Circuit's *en banc* 2020 *Exby-Stolley* decision clarified that a failure-to-accommodate claim does not require a plaintiff to demonstrate adverse employment action. That holding is consistent with the Court's earlier decision granting summary judgment to USPS.

7

As stated in the Court's Order granting USPS summary judgment, Plaintiff must make three showings to advance his failure-to-accommodate claims: "(1) he is disabled; (2) he is otherwise qualified; and (3) he requested a plausibly reasonable accommodation." *Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 792 (10th Cir. 2020) (alterations omitted) (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)). To determine whether a proposed accommodation is reasonable, the court must consider "the facts of each case taking into consideration the particular individual's disability and employment position." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

### 2. USPS had no obligation accommodate Plaintiff during the time period Plaintiff's physician said he could not work at all, which began July 29, 2013, and continued until Plaintiff took disability retirement

Plaintiff contends the Court erred when it indicated USPS had no obligation to accommodate Plaintiff during the time that his physician opined Plaintiff could not work, which began on July 29, 2013. Plaintiff identifies no legal error. "The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual." *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *see also Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014) (finding employee who could not work for six months incapable of discharging essential employment duties); *Gardenhire v. Manville*, 722 F. App'x 835, 839 (10th Cir. 2018) ("Although a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation,' an employer '[i]s not required to wait indefinitely for [the employee's] recovery.'") (quoting *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167 (10th Cir. 1996)).

8

Plaintiff's physician indicated Plaintiff was unable to work at all from July 29, 2013, until Plaintiff obtained disability retirement, effective April 18, 2015.[13] Plaintiff has never suggested any modification[14] that could be made to his job to accommodate his status, as indicated in notes provided by his doctor, of "unable to return to work," which persisted continuously for almost two years before Plaintiff retired due to his disabilities.[15] While Plaintiff takes the litigation position here that he was attempting to seek an accommodation, he is unable to point to any evidence he ever asked for an accommodation that could clear up this psychological inability to be present at work. There is no evidence in the record that Dr. Morse ever cleared Plaintiff to go back to work. During argument on summary judgment, Plaintiff referred to beginning a "dialogue"[16] but never suggested there was any accommodation that could have alleviated his inability to work.[17] Further, Plaintiff's successful application for permanent disability payments[18] contradicts his argument that he was, in fact, able to work. Thus, the undisputed facts in the summary-judgment record indicate Plaintiff was not a qualified individual on or after

---

[13] Dr. Morse Work Note Prescription (ECF No. 23, Ex. L); *see* PS Form 50 (ECF No. 23, Ex. A).

[14] *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1264 (10th Cir. 2009) ("When alleging a failure to accommodate, a plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation.").

[15] *See* Marc Morse Work Note Prescriptions (ECF No. 23, Ex. L).

[16] Plaintiff apparently overlooks the dialogue that did take place in 2014 and 2015. In early 2015, USPS deferred discussion of further accommodation to the Office of Workers' Compensation Programs, who was then evaluating Plaintiff's ability to work. (ECF No. 28, Ex. 25 at 8–9). It is unclear what additional "dialogue" regarding accommodations was ever necessary in light of Plaintiff's successful application for disability retirement. (ECF No. 28, Ex. 26).

[17] *See* Mot. Summ. J. Hr'g at 25–27 (ECF No. 49).

[18] *See* Mot. Summ. J. Hr'g 15:24–16:6, 17:23–18:12; ECF No. 28, Ex. 26.

9

July 29, 2013, because his disability prevented him from performing the essential functions of his job.

### 3. The undisputed facts show USPS reasonably accommodated Plaintiff's disabilities prior to his incapacity, which began July 29, 2013

Plaintiff suggests the Court erroneously adopted a rule that requests for accommodation must be made in writing. The Court adopted no such rule. Instead, the Court found that the undisputed facts demonstrated that USPS complied with each of Plaintiff's requests for reasonable accommodations of his then-existing disabilities. USPS had no notice of any disability that prevented Plaintiff from pushing or pulling until after his injury on July 16, 2013[19] – nor is there evidence to suggest Plaintiff actually suffered any disability that prevented him from pushing or pulling prior to that date. Further, there is no evidence in the record to suggest USPS failed to accommodate Plaintiff once USPS was informed of the restrictions resulting from the July 16 accident, which injured Plaintiff's neck.

As an initial matter, USPS made several accommodations for Plaintiff's various disabilities. Plaintiff had a documented history of seeking, and obtaining, accommodations from USPS based on various medical issues including problems with his neck, stress, anxiety, depression, and sleep apnea.[20] At various times he was allowed to take FMLA leave to accommodate these conditions.[21] Plaintiff's arguments, at times, blur the lines between these disabilities, particularly his neck injury as it existed prior to July 16, 2013, and those stemming

---

[19] Plaintiff suffered a neck injury while on the job on July 16, 2013, while pushing an orange parcel gurney. The injury resulted in additional equipment limitations for Plaintiff. *See* Ord. Granting Summ. J. at 3–4 (ECF No. 46).

[20] Pl.'s Opp. Summ. J. at 4–6 (ECF No. 28).

[21] *Id.* at 4–5.

10

from Plaintiff's neck injury on July 16, 2013. The record indicates Plaintiff's neck condition worsened, and his limitations increased, after the July 16 accident.

Prior to July 16, Plaintiff was medically restricted, based on his neck injury, from working more than eight hours per day.[22] Yet the record is notably devoid of any indication that Plaintiff suffered a disability that restricted his ability to push or pull prior to the July 16 injury. The information he provided to USPS regarding his neck-related limitations does not limit the amount of weight Plaintiff could push or pull. Importantly, the record is not devoid of any mention of a push or pull restriction. The form in Plaintiff's file, addressing his neck-related limitations, has a blank field where his physician could have listed weight restrictions but did not do so.[23] The only limitation Plaintiff's physician indicated on that form restricts the number of hours Plaintiff could work.

When the Court inquired during the summary-judgment hearing, Plaintiff's counsel admitted there was no note from any physician restricting Plaintiff from pushing or pulling any amount of weight due to the disability in his neck prior to the July 16 accident.[24] While the notes in Plaintiff's file are a helpful source of information, the Court need not, and does not, confine its analysis to any note, or absence thereof, in Plaintiff's file. The Court also considers Plaintiff's own deposition testimony. Plaintiff testified that the first time he received information from his doctor that he could not use the orange parcel gurney due to his neck problems came on July 22, 2013, "[a]fter the date of [Plaintiff's] injury."[25] In short, Plaintiff offered no evidence at

---

[22] *Id.* at 4.

[23] *See* Def.'s Mot. Summ. J., Ex. B.

[24] Mot Hr'g at 21–22 (ECF No. 49).

[25] Ford Dep. at 54 (ECF No. 28, Ex. 1).

summary judgment that his neck condition, as it existed prior to the July 16, 2013 accident, prevented him from pushing or pulling any amount of weight. USPS had no obligation to accommodate a disability that did not exist.

Plaintiff had an argument with his supervisor about how he should complete a task and he was allegedly injured as a result of what he was instructed to do.[26] Notwithstanding, the question for the Court here was whether Plaintiff established a violation of the ADA by way of a purported failure to accommodate. He did not. Plaintiff did not provide evidence of his remaining claims sufficient to survive summary judgment and does not now show, pursuant to Rule 59, that the judgment should be modified.

### III. ORDER

Based on the foregoing, Plaintiff's Motion to Alter Judgment is hereby DENIED. (ECF No. 50).

Dated this 14th day of May 2021.

BY THE COURT

Bruce S. Jenkins
United States Senior District Judge

---

[26] Plaintiff appears to suggest he made a request for reasonable accommodation by telling his supervisor that his doctors told him not to do something if it hurt. (ECF No. 28 at 10–11; ECF No. 23, Ex. D at USA002938). Even assuming this constitutes a request for accommodation – at all – the purported request does not seek a reasonable accommodation because it is limitless. The personal, subjective, standard of such a measure – a little pain or a lot – ignores the job requirements and is no measure at all of the requisite reasonableness.